UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| MELODY C. DIXON, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 08-222-ART |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | **MEMORANDUM OPINION** |
| Commissioner of Social Security, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |
| | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

This matter is before the Court on the cross-motions for summary judgment filed by Plaintiff Melody Dixon, R. 10, and Defendant Michael Astrue, Commissioner of Social Security, R. 11. For the reasons given below, the Court grants Defendant's Motion for Summary Judgment and denies Plaintiff's.

**I.   BACKGROUND**

Dixon filed an application for supplemental security income on February 25, 2003. Adm. R. at 18. Dixon alleged a disability based on a combination of impairments including pneumonia, acute bronchitis, COPD, and depression beginning January 15, 2003. *Id.*; *id.* at 784-85. The claims were denied both initially and on reconsideration.

At Dixon's request, an administrative hearing was held before an Administrative Law Judge (ALJ) on July 30, 2004. *Id.* at 784-94  After this first hearing, Dixon was referred for a consultative examination that occurred on September 29, 2004, by Dr. Bobby J. Kidd. *Id.* at 600-604 (Exhibit 18F). Dr. Kidd noted that "patient still smokes cigarettes and states that she smokes well over ½ a

pack a day." *Id*. at 600. He found no major disorder, but concluded she had history of middle lobe syndrome, continued tobacco abuse, and history of pneumonia. *Id*. at 604. On January 31, 2005, the ALJ denied Dixon's claims. *Id.* at 47-59.

Dixon requested a review of that decision and on April 27, 2005, and the Appeals Council issued an Order remanding the case back to the ALJ. *Id.* at 62-65. Thereafter, a supplemental hearing was held on January 4, 2006. *Id.* at 772-781. During the hearing, the ALJ heard testimony from Dixon who admitted that she continues to smoke "between half a pack and a pack a day." *Id.* at 774. The ALJ ordered another consultative examination of Dixon including a residual functional capacity assessment. *Id* at 780-81.

Dixon underwent the consultative examination on March 29, 2006, by Dr. Stephen Nutter. *Id.* at 243-247 (Exhibit 41F). Dr. Nutter noted that Dixon reported tobacco use and admitted she "smokes ½ packs [sic] per day for 18 years." *Id*. at 244. He summarized that his impression was COPD and asthma, chronic thoracic and lumbar strain scoliosis with no evidence of radiculopathy, chest, pain and seizure disorder. *Id*. at 246.

On October 18, 2006, the ALJ denied Dixon's claim. *Id.* at 18-26. The Appeals Council denied Dixon's request for review of the ALJ's decision, *id.* at 9, at which point the ALJ's decision became the final decision of the Commissioner of Social Security. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

II. SOCIAL SECURITY REVIEW PROCESS AND THE ALJ'S DECISION

A claimant can receive benefits only if she is deemed "disabled" under the Social Security Act. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001) (citing 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A)(1988)). "A claimant qualifies as disabled if she cannot, in light of her age,

2

education, and work experience, 'engage in any other kind of substantial gainful work which exists in the national economy.'" *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (en banc) (quoting 42 U.S.C. § 423(d)(2)(A)).

To identify claimants who fit within this definition of disability, the Social Security Administration (SSA) uses a five-step "sequential evaluation process." 20 C.F.R § 404.1520(a)(4); *see Combs*, 459 F.3d at 642. Step one examines the work activity of the claimant to determine whether she is engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4). Step two is a determination of whether the claimant has a medically determinable "severe impairment" or combination of impairments that qualify as severe. *Id.* Step three determines whether the claimant's impairments meet the criteria set forth in the regulations to categorize an individual as "disabled." *Id*. The fourth step examines whether the claimant retains any "residual functional capacity" and whether the claimant can return to her past relevant work. *Id*. Finally, if the claimant is unable to return to any past relevant work, it must be determined whether she has the residual functioning capacity to do any other work. *Id*. The claimant bears the burden through the first four steps, but the burden shifts to the SSA on the fifth step. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

In this case, the ALJ performed the requisite five-step process to evaluate Dixon's claims. First, the ALJ found that Dixon had not engaged in substantial gainful activity since January 15, 2003, the date on which Dixon allegedly became disabled. *See* Adm. R. at 20. At step two, the ALJ determined that Dixon had the following severe impairments: status-post right thoracotomy and middle lobectomy, history of pneumonia and chronic bronchitis, chronic obstructive pulmonary disease, and history of depression. *Id.* at 20. At step three, the ALJ concluded that none of these impairments, or combination of impairments, met or medically equaled an impairment on the SSA's

3

list of impairments. *Id.* at 22. At step four, the ALJ evaluated Dixon's residual functional capacity and found that she could lift up to 50 pounds occasionally and 25 pounds frequently, had the ability to sit up to 5 hours continuously and stand/walk up to 5 hours of an 8 hour day for both activities, and that she required low stress work with routine non-detailed tasks. *Id.* at 23. The ALJ adopted the restrictions offered by consultative physician Dr. Nutter and rejected the opinion of Dixon's treating physician, Dr. Echeverria. *Id.* at 24. The ALJ noted that he "declined to give controlling weight to this opinion," because "it was performed at the claimant's request and is quite conclusory, providing very little explanation of the evidence relied on in forming that opinion." *Id*. The ALJ proceeded to the fifth and final step and determined that Dixon was unable to perform any past relevant work, but "considering the claimant's age, education, work experience, and residual functional capacity" concluded that "there are jobs that exist in significant numbers in the national economy that the claimant can perform." *Id.* at 25. Therefore, the ALJ determined that Dixon was not disabled. *Id.* at 26.

### III. STANDARD OF REVIEW

Judicial review of the Commissioner's decision is restricted "to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (citing 42 U.S.C. § 405(g); *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). Substantial evidence means "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Cutlip*, 25 F.3d at 286).

In determining the existence of substantial evidence, courts must examine the record as a whole. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (citing *Kirk v. Sec'y of Health*

*& Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981)). If the Commissioner's decision is supported by substantial evidence, this Court must affirm that decision even if there is substantial evidence in the record that supports an opposite conclusion. *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007) (quoting *Longworth v. Comm'r of Soc. Sec. Admin.*, 402 F.3d 591, 595 (6th Cir. 2005)). Further, when reviewing the Commissioner's decision, the Court cannot "try the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007) (citing *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001)).

## IV. ANALYSIS

Dixon raises two challenges in support of her claim that the ALJ's decision should be reversed. First, she argues the ALJ failed to accord the appropriate weight to the opinion of Dr. Echeverria, Dixon's treating physician, in determining her residual functioning capacity and thus the ALJ's decision was not supported by substantial evidence. R. 10 at 7- 12. Second, she argues the ALJ failed to consider Dixon's behavior–her history and persistent attempts to seek medical help– as enhancing her overall credibility. R. 10 at 12-14.

**Consideration of Dr. Echeverria's Opinion**.

Dixon challenges the ALJ's finding regarding her residual functional capacity, step four of the ALJ's analysis. R. 10 at 7. In making the determination, the ALJ deferred to the opinions of Dr. Nutter and Dr. Kidd whose opinions formed the basis for the ALJ's finding regarding Dixon's residual functional capacity. The ALJ found the following regarding Dixon's residual functional capacity:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift up to 50 pounds occasionally, 25 pounds frequently, the ability to sit up to 5 hours continuously and stand/walk up to

> 5 hours of an 8 hour day for both activities with routine rests, occasional climbing, frequent bending, squatting, crawling, and reaching above shoulder level, with moderate limitations in exposure to dust/fumes/gases, and mild limitation in the ability to be exposed to marked changes in temperature/humidity; the claimant requires low stress work that involves only routine, simple and non-detailed tasks, where public and co-worker contact is casual and infrequent; where supervision is direct and non-confrontational; and where changes in the workforce are infrequent and gradually introduced.

Adm. R. at 23.

This finding is in contrast to Dr. Echeverria's opinion, Dixon's treating physician. Dr. Echevarria opined:

> "claimant could lift/carry up to 20 pounds occasionally or less than 10 pounds frequently, sit up to 45 minutes at a time or less than two hours during an 8-hour work day, stand up to 45 minutes at a time or less than two hours during an 8 hour work day or walk about one city block at a time or less than two hours during an 8 hour work day. . . . [C]laimant should avoid all exposure to extreme cold/heat, high humidity, chemicals, solvents/cleaners, soldering fluxes, cigarette smoke, perfumes, fumes, odors, dusts or gases."

*Id.* at 24; 445-448 (Exhibit 9F).

The Regulations provide a framework for the evaluation of opinion evidence. With regard to treating source opinion evidence, the applicable Regulation provides:

> If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(I) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.

20 C.F.R. § 404.1527(d)(2). The ALJ, in determining how much weight is appropriate, must consider a "host of factors, including the length, frequency, nature, and extent of the treatment

6

relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician;" and any other relevant factors. *Wilson*, 378 F.3d at 544; *see also* § 404.1527(d). Thus, although the opinion of a treating source is not necessarily binding, an ALJ is required to set forth some basis for the decision to reject a treating source opinion. *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987); *see also Hickey-Haynes v. Barnhart*, 116 F. App'x 718, 725 (6th Cir. 2004) (noting that in cases where the treating physician rule applies, a reviewing court must evaluate whether the ALJ gave good reasons for his decision not to give controlling weight to a treating source opinion, as required by the governing Regulation).

As mandated by 20 C.F.R. § 404.1527(d), the ALJ considered Dr. Echeverria's opinion and explained why he gave it little weight. The ALJ discussed his assessment that he "declined to give controlling weight to this opinion," because "it was performed at the claimant's request and is quite conclusory, providing very little explanation of the evidence relied on in forming that opinion." Adm. R. at 24. "Where a treating doctor makes broad 'conclusory formulations, regarding the ultimate issue which must be decided by the Secretary, [those findings] are not determinative of the question of whether or not an individual is under a disability.'" *Anthony v. Astrue*, 266 Fed. App'x 451, 459 (6th Cir. 2008) (citing *Kirk*, 667 F.2d at 538).

Here, substantial evidence supports the ALJ's decision. As discussed by the ALJ, he considered the opinion testimony of consultative examiner, Dr. Nutter "who found the claimant ambulated with a normal gait, was stable at station, and comfortable in sitting/supine positions. Some decreased ranges of motion in the lumbar spine were noted, but straight leg raising was negative. There were no sensory abnormalities, and her reflexes were normal as was muscle strength. Ms. Dixon was not short of breath with mild exertion or in the supine position, and her lungs were clear

of any wheezes, rales, or rhonchi. Neurological examination was also normal, and there was no evidence of anginal chest pain based on no S3 gallop, rales, or pitting edema." Adm. R. at 23-24 (citing Ex. 41F). In addition, he noted that Dixon continues to smoke and that her symptoms of bronchitis and pneumonia are adequately controlled when she takes prescribed medication. *Id.* at 24; *see Dykes ex rel Brymer v. Barnhart*, 112 Fed. App'x 463, 468–69 (6th Cir. 2004) (citing *Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 367 (6th Cir.1984) ("Evidence indicating that the claimants impairments can be controlled with medication can serve as substantial support for an ALJ's conclusion.")).

He also found that her allegations regarding seizures and depression were not supported by any evidence of ongoing treatment for these impairments in the record. *Id*. Notably, at the January 4, 2006, hearing Dixon admitted that no one had been treating her for her allegations of seizures. Adm. R. at 777. With regard to her depression, Dr. Echeverria referred Dixon to a psychiatrist, Dr. Kaza in 2003. Adm. R. at 442. Dr. Kaza noted that she had a "moderate degree of depression symptoms" and recommended that Dixon begin taking the medication Paxil. *Id.* at 443. In addition, Dixon appears to have been diagnosed with a depressive disorder in 2004 by the Cumberland River Care Center, although there is no further explanation or records regarding this diagnosis. *See id.* at 227. Although there is some evidence in the record regarding these alleged disabilities, there is in fact, no medical evidence provided in the record of any work related limitations regarding either the seizures or depression.

These assessments are consistent with the ALJ's determination that Dixon has some residual functional capacity. The Regulations require the ALJ to look to the record as a whole – not just to medical opinions – to decide whether substantial evidence is inconsistent with a treating physician's

assessment. *See* 20 C.F.R. § 404.1527(d)(2), (4). Under this standard, the ALJ could properly find that Dr. Echeverria's opinion was not entitled to controlling weight.

Dixon makes a number of unavailing arguments. Contrary to Dixon's assertion, it is clear whose opinion testimony the ALJ relied upon. The ALJ's findings are almost entirely consistent with Dr. Nutter's. Dixon argues that Dr. Nutter agreed with Dr. Echeverria in finding that she should "never be exposed to unprotected heights, being around moving machinery, being exposed to marked changes in temperature and humidity, driving automobile equipment, and to being exposed to dust, fumes, and gases." R. 10 at 10. However, this assertion is unsupported by the record. Dr. Nutter on the Functional Capacities Form checked "none" as to whether there were any restrictions regarding these specific activities. Adm. R. at 251.

In addition, Dixon argues the ALJ failed to make any finding relevant to the claimant's ability to "carry" which resulted in an incomplete hypothetical question posed to the vocational expert. R. 10 at 10. Dixon is correct that the ALJ failed to make such a finding regarding her ability to "carry." However, the ALJ's thorough discussion of Dixon's residual functional capacity accurately portrays her overall physical limitations. *See Varley v. Sec. of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987) (finding "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, but only if the question accurately portrays an individual's physical and mental impairments." (quotations omitted)). Further, the conclusion drawn by the ALJ that Dixon could perform "low stress work" is consistent with Dr. Nutter's opinion that she could both lift and carry between 21-50 pounds occasionally and 11-20 pounds frequently. Adm. R. at 251. Moreover, the vocational expert identified ten jobs Dixon could perform, three of which were at "sedentary" exertional levels. Adm. R. at 84; 20 C.F.R. § 404.1567(a) (defining "sedentary" as work

9

that involves lifting no more than ten pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools).

Dixon also emphasizes a statement made by Dr. Echeverria that she is "unable to work at present." R. 10 at 12. However, this note was written on a prescription pad and does not provide any basis for the statement. Adm. R. at 750. In addition, this statement is dated April 16, 2007–well after the October 18, 2006 date of the ALJ's decision that is currently before this Court.

Therefore, as to her first argument, the Court concludes substantial evidence in the record exists to support the ALJ's conclusion not to give controlling weight to Dr. Echeverria's opinion.

### Consideration of Dixon's Credibility.

Dixon also maintains that the ALJ improperly assessed her credibility because he failed to take into account her persistent efforts to seek medical treatment. A claimant's subjective assessment of her symptoms is relevant to determining whether she suffers from a disability but is not conclusive evidence of a disability. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 392 (6th Cir. 2004) (citing *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001)). An ALJ's credibility determinations are entitled to great deference "particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Comm'r of Soc. Sec.*, 127 F3d 525, 531 (6th Cir. 1997). Nevertheless, an ALJ's determination as to credibility must be supported by substantial evidence. *Id*. The claimant's credibility may be properly discounted "to a certain degree . . . where an [ALJ] finds contradictions among the medical reports, claimant's testimony, and other evidence." *Warner*, 375 F.3d at 392 (citing *Walters*, 127 F.3d at 531).

In determining her residual functional capacity, the ALJ found Dixon's "statements concerning the intensity, persistence and limiting effects" of her symptoms was not entirely credible. Adm. R.

at 23. He noted that since her surgery in 2002 she had not required any further invasive procedures. *Id*. at 24. In sum, he concluded:

> The pervasive evidence indicates her symptoms are adequately controlled for the most part when she is compliant with prescribed medication. Clinical examinations have remained essentially unremarkable except for intermittent periods when she has been non-compliant with completing a course of antibiotic therapy. Of further significance, the claimant continues to abuse nicotine despite repeated strong urgings from various medical sources to abstain from cigarette smoking. At various times throughout the record, she has reported attempts at trying to quit; however, until fairly recently, she continued to be dependent upon cigarettes at a rate of two packs a day.

*Id.*

The ALJ does not dispute that Dixon sought treatment for a number of years related to her symptoms of pneumonia and bronchitis, rather he disputes the severity of those symptoms. In March 2002, prior to her lung surgery, Dixon reported missing doses and not taking her prescribed antibiotic regularly. *Id.* at 383. Dixon argues the ALJ should not give controlling weight to this one negative finding because it "fails to consider the record as a whole." R. 10 at 13. This Court disagrees.

The examinations by Dr. Nutter and Dr. Kidd support the ALJ's credibility assessment. Although Dixon complained of back pain, Dr. Nutter noted that Dixon "ambulates with a normal gait" and appears "comfortable in the supine position." Adm. R. at 244. Further, he found that although she complained of shortness of breath "the claimant was not short of breath with mild exertion or in the supine position. The lungs were clear of any wheezes, rales, or rhonchi." *Id*. at 246. Dr. Kidd's conclusions were consistent with those of Dr. Nutter. Kidd also stated that "patient ambulates with normal gait" and "appears comfortable in the supine and sitting positions." *Id.* at 601. In addition, he found that her lung fields were clear and that there was good AP expansion on deep inspiration. *Id*. at 602. Thus, other examples of inconsistencies existed in the record to support the

ALJ's conclusion to discount Dixon's credibility.

Moreover, through the course of his treatment, Dr. Echeverria repeatedly noted that Dixon reported smoking two packs of cigarettes a day. *See* Adm. R. 98, 137, 148, 171. However, she reported to both consultative examiner Nutter and Kidd only smoking "½ pack a day." *See* Adm. R. at 244, 600. In this case, there was more than enough evidence to support the ALJ's credibility determinations.

After reviewing the record as a whole, the Court finds that the ALJ's decision that Dixon is not disabled is supported by substantial evidence. *See Mullen*, 800 F.2d at 545. Therefore, the ALJ's decision must stand because the evidence reasonably supports his conclusion. *See Colvin v. Barnhart*, 475 F.3d at 730.

V. CONCLUSION

For the reasons given above, it is **ORDERED** as follows:

(1)  Plaintiff's Motion for Summary Judgment, R. 10, is **DENIED.**

(2)  Defendant's Motions for Summary Judgment, R. 11, is **GRANTED**.

(3)  Judgment will be entered consistent with this Memorandum Opinion and Order.

This the 13th day of March, 2009.



Signed By:
*Amul R. Thapar* AT
United States District Judge